IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO.: 5:10CV27-RLV

MATT JENKINS,               )
       Plaintiff,          )
                            )
    vs.                    )          **Memorandum and Order**
                            )
RJM ACQUISITIONS, LLC,      )
       Defendant.          )
_____ )

**THIS CAUSE** is before the Court upon cross-motions for summary judgment, filed by the Defendant, RJM ACQUISITIONS, LLC, (Docs. 42, 43), and by the Plaintiff, MATT JENKINS, (Docs. 33, 34), as well as all supporting memoranda and exhibits.

**I.**

Plaintiff Matt Jenkins ("Jenkins") initiated this lawsuit on February 16, 2010, with the filing of a Complaint in Iredell County Superior Court, Iredell County, North Carolina. (Doc. 1 / Exh. A)  On March 3, 2010, Defendant RJM Acquisitions, LLC ("RJM"), filed a timely Notice of Removal.  (Doc. 1).

After seeking leave of Court, on September 22, 2010, Jenkins was permitted to file an Amended Complaint.  (Docs. 10,17,18). Jenkins' Amended Complaint alleges six (6) causes of action based upon alleged violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA") (Doc. 18, at 3), the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") (Doc. 18, at 5), and Title 70 of the North Carolina General Statutes governing the collection of consumer debt, N.C. GEN. STAT. § 58-70-101, *et seq*. (Doc. 18, at 3-6).   Plaintiff's factual allegations are as follows:

1

- RJM purchased defaulted and charged-off credit card accounts that RJM contends belong to Jenkins;

- RJM sent collection letters to Jenkins making offers of settlement, including offers to accept partial payments;

- RJM's collection letters to Jenkins did not disclose the nature and consequences of affirming or acknowledging any debt barred by the statute of limitations or advise Jenkins that he was not legally obligated to do so under North Carolina law;

- The credit card accounts RJM sought to collect on had been charged-off in 1994;

- Jenkins, a resident of California in 1994, relocated to North Carolina in 2007;

- The credit card accounts RJM sought to collect on were time-barred under both California and North Carolina law;

- On February 24, 2009, Jenkins phoned RJM in an attempt to obtain additional information about the outstanding debts;

- During the February 24, 2009 telephone call, the RJM collection representative asked Jenkins if he wanted to settle the debts and / or if he was willing to acknowledge that the accounts belonged to him;

- The RJM collection representative did not say anything to Jenkins during the February 24, 2009 phone call regarding the nature and consequences of affirming or acknowledging a time-barred debt or advise Jenkins that he was not legally obligated to do so under North Carolina law;

- After Jenkins indicated that he disputed the debt, the RJM collection representative advised Jenkins that the accounts would be closed;

- RJM continued collection efforts after the RJM representative stated that the accounts would be closed.

(Am. Compl., 2-3).

On April 11, 2012, Jenkins filed a voluntary petition for relief pursuant to Chapter 7 of the United States Bankruptcy Code in the Bankruptcy Court in this district. (Document #52) (*See WDNC Bankruptcy Case No.: In re Jenkins*, 12-50413). On May 12, 2012, pursuant to FED. R. CIV. P. 24(a)(2), the Bankruptcy Trustee ("Trustee") was permitted to intervene in the instant case as a real party in interest. (Doc. 54)

The Court also takes judicial notice that Jenkins has commenced at least ten (10) different civil actions in the Western District of North Carolina, in each instance alleging violations of the same federal statutes against various creditors. Many, if not all, of the cases brought by Jenkins in this district have since been settled by the Trustee.

## II.

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (2010). In order to support or oppose a summary judgment motion, a party is required to cite to "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, . . . admissions, interrogatory answers, or other materials;" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1); *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986) (applying former version of Rule 56); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) (same). A genuine issue exists only if "the evidence is such that a reasonable jury could return a verdict for the non-

moving party." *Anderson*, 477 U.S. at 248; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A "mere scintilla of evidence" is insufficient to overcome summary judgment. *Anderson*, 477 U.S. at 249-50. In conducting its analysis, the Court views the evidence in the light most favorable to the non-moving party. *Celotex Corp.*, 477 U.S. at 325.

When considering cross-motions for summary judgment, the court "examines each motion separately, employing the familiar [Rule 56(c)] standard." *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351 (4th Cir. 2011) (internal citations omitted); *Rossignol v. Voorhaar,* 316 F.3d 516, 523 (4th Cir. 2003) (Court reviews each motion separately on its own merits "to determine whether either party deserves judgment as a matter of law") (internal citations omitted). When considering each individual motion, the court must take care to "resolve all factual disputes and any competing, rational inferences in the light most favorable" to the party opposing the motion. *Rossignol,* 316 F.3d at 523 (internal citation omitted).

**III.**

Jenkins asserts claims alleging that RJM violated various aspects of the FCRA, the FDCPA, and Title 70 of the North Carolina General Statutes. Since both parties move for summary judgment, the viability of each claim will be discussed separately and the parties' respective legal arguments concerning each claim will be addressed in connection with the relevant statutory provision.

    A. <u>Fair Credit Reporting Act</u>

Jenkins alleges that RJM violated the FCRA, which states in pertinent part:

(a) [A]ny consumer reporting agency may furnish a consumer report under the following circumstances and no other . . . . (3) to a person which it has reason to believe (A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extenstion of credit to, or review or collection of an account of the conusmer.

4

15 U.S.C. § 1681b(a)(3)(A) (2010).

To prove a violation of Section 1681b, Jenkins must show that RJM acted with an impermissible purpose in obtaining his consumer credit report. *See Yohay v. Cirty of Alexandria Employees Credit Union*, 827 F.2d 967, 972 (4th Cir. 1987). Under § 1681b, an impermissible purpose includes any purpose not expressly identified as permissible within § 1681b(a)(3)(A) – (E). *Yohay*, 827 F.2d at 972 (citing *Hansen v. Morgan*, 582 F.2d 1214, 1219-20 (9th Cir. 1978)). Collection of an outstanding debt is explicitly included within §1681b(a)(3)(A) as a "permissible purpose" to review a consumer's credit report.

Relevant to this claim, Jenkins alleges that between the months of June 2007 and July 2008, RJM obtained copies of his TransUnion consumer credit report. Jenkins acknowledges that RJM is a debt collector and that debt collectors as such may obtain credit reports. For purposes of § 1681b, the issue presented is whether RJM was the owner of a debt belonging to Jenkins. RJM produces documentation of its purchases of the Jenkins' accounts, purchases from Le Petomane XXII, Inc., on January 25, 2005, and Wells Fargo Bank on December 22, 2005. (Doc. 43-1 / Greenberg Aff. ¶¶2-3, Exhs. A, B). Nothing in the record suggests illegality or impropriety in these purchases. The various credit card debt obligations – the subject of these sales - were incurred by Plaintiff Matthew A. Jenkins, identifying him by his social security number, address, and phone number. Pursuant to the information provided by the sellers, Jenkins is the account holder. When RJM purchased Jenkins' accounts, RJM then became situated as having a "permissible purpose" under 15 U.S.C. § 1681b. For this reason, with respect the the first cause of action, Jenkins' motion for summary judgment is denied and RJM's motion for summary judgment is granted.

5

B. <u>Fair Debt Collection Practices Act</u>

Jenkins' fifth cause of action asserts a claim against RJM pursuant to various sections of the FDCPA. The FDCPA states that "a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt". 15 U.S.C. § 1692f. Included in the list of unfair and unconscionable means is the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. *Id.* at § 1692f(1).

Jenkins' FDCPA claim is based upon three scenarios alleged in the Amended Complaint. Jenkins alleges that RJM violated the FDCPA by attempting to collect time-barred debts, by requesting an "acknowledgment" from Jenkins regarding those debts, and by continuing to collect the debts after the RJM representative stated the accounts were being closed. (*Id.* at 8.) However, the FDCPA does not prohibit seeking acknowledgments of a debt or trying to collect debt that is beyond the statute of limitations so long as litigation is not threatened or commenced. *Freyermuth v. Credit Bureau Servs., Inc.*, 248 F.3d 767, 771 (8th Cir. 2001). There is no evidence that RJM threatened litigation, nor has Jenkins ever alleged that litigation was threatened by RJM. A statement that a given account is going to be closed amidst ongoing collection efforts does not amount to a violation of § 1692f. Based on the foregoing, regarding the fifth cause of action, Jenkins motion for summary judgment is denied and RJM's motion for summary judgment is granted.

C. <u>North Carolina Debt Collection Statutes</u>

Jenkins' second, third, fourth, and sixth causes of action assert claims against RJM pursuant to various sections of North Carolina's debt collection statutory scheme.

### 1. Second Cause of Action

Jenkins alleges RJM continued collection efforts without documentation in violation of the N.C. General Statutes, which state, in relevant part:

> When the collection agency is a debt buyer or acting on behalf of a debt buyer, bringing suit or initiating an arbitration proceeding against the debtor, or otherwise attempting to collect on the debt without (i) valid documentation that the debt buyer is the owner of the specific debt instrument or account at issue and (ii) reasonable verification of the amount of the debt allegedly owed by the debtor. For purposes of this subdivision, reasonable verification shall include documentation of the name of the original creditor, the name and address of the debtor as appearing on the original creditor's records, the original consumer account number, a copy of the contract or other document evidencing the consumer debt, and an itemized accounting of the amount claimed to be owed, including all fees and charges.

N.C. GEN. STAT. § 58-70-115(5)(2009). Section 115(5) became law in October of 2009 and was explicitly made non-retroactive. *See* 2009 North Carolina Laws S.L. 2009-573 (S.B. 974).

Following the February 24, 2009 telephone conversation between Jenkins and RJM, there were no further efforts made to collect Jenkins' debt.[1] Therefore, any events supporting Jenkins' claim under N.C. GEN. STAT. § 115(5) must be those that occurred on and before February 24, 2009. Since all of the applicable collection activity pre-dated the addition of § 115 to the North Carolina Code, this section is not applicable. There is no genuine dispute as to any material fact regarding continued collection efforts by RJM. Therefore, with respect to the second cause of action, Jenkins' motion for summary judgment is denied and RJM's motion for summary judgment is granted.

---

[1] On February 8, 2010, Jenkins filed for bankruptcy. RJM's collection system generated proofs of claims on the accounts despite being properly coded in RJM's system. (Doc. 43.) RJM immediately generated a claim withdrawal notice that was filed with the bankruptcy court on February 11, 2010. This action was inadvertent and non-prejudicial to Plaintiff. As such, it does not rise to the level of an attempt to collect.

## 2. Third Cause of Action

Jenkins further alleges that RJM's collection letters and telephone conversations amount to unfair debt collection practice in violation of N.C. GEN. STAT. § 58-70-115(1) because they sought an "acknowledgment" of debt without disclosing the nature and consequences of such affirmation. North Carolina's Section 58-70-115(1) provides:

> No collection agency shall collect or attempt to collect any debt by use of any unfair practices. Such practices include, but are not limited to, the following:
>
> (1) Seeking or obtaining any written statement or acknowledgment in any form containing an affirmation of any debt by a consumer who has been declared bankrupt, an acknowledgment of any debt barred by the statute of limitations, or a waiver of any legal rights of the debtor without disclosing the nature and consequences of such affirmation or waiver and the fact that the consumer is not legally obligated to make such affirmation or waiver.

N.C. GEN. STAT. § 58-70-115(1).

While it is undisputed that RJM sent several letters to Jenkins regarding his outstanding debt, at no time did RJM expressly solicit a written affirmation or acknowledgment from Jenkins. In order for an acknowledgment or affirmation to renew the expired statute of limitations, the acknowledgment must be in writing. *See* N.C. GEN. STAT. § 1-26 (2010) ("no acknowledgment or promise to pay is evidence of a new of continuing contract, from which the statutes of limitations run, unless it is contained in some writing signed by the party to be charged thereby"). A mere oral acknowledgment of the debt is insufficient.[2] *See e.g., George W. Helm Co. v. Griffin*, 16 S.E. 1023 (N.C. 1893). There are no facts supporting a contention

---

[2] Jenkins also mistakenly argues that a partial payment and an "acknowledgment" as the term is used in N.C. GEN. STAT. § 58-70-115(1), are legally one in the same. A written acknowledgment and a partial payment can both re-start the statute of limitations, but this does not give them the same legal meaning. For partial payment to serve as a means of renewing the statute of limitations, a payment must have actually been made. *See Hewlett v. Schenck*, 1880 WL 3158 (N.C.1880). No payment was ever made to RJM by Jenkins. Therefore, this argument is without merit.

that RJM solicited a written affirmation or acknowledgment from Jenkins. The February 2009 phone conversation, initiated by Jenkins, cannot support this claim as Jenkins' dispute was made known to RJM at that time. Similarly, none of the letters sent to Jenkins contained any language requesting written acknowledgment of the debts (or otherwise provided a place for Jenkins' signature with the directive that the letter should be returned to RJM). Furthermore, if the N.C. General Assembly had intended a general collection letter to constitute a violation of § 58-70-115(1), then there would have been no reason to enact Subsection 115(4), which prohibits "attempting to collect on a debt" the debt buyer knows is beyond the limitations period.[3] In sum, the enactment of § 58-70-115(1) was meant to keep collection agencies from luring unsuspecting consumers into reviving the expired statute of limitations by obtaining written acknowledgments of time-barred debts. In this case, RJM did not threaten litigation or attempt to extend the statute of limitations by soliciting any written affirmation of the debt. For these reasons, as to the third cause of action, Jenkins' motion for summary judgment is denied and RJM's motion for summary judgment is granted.

### 3. Fourth Cause of Action

Jenkins roots his fourth cause of action in N.C. GEN. STAT. § 58-70-110, which states "no collection agency shall collect or attempt to collect a debt or obtain information concerning a consumer by any fraudulent, deceptive, or misleading representation". Jenkins alleges that RJM violated this section because the credit reporting agency released Jenkins' report without an enumerated permissible purpose and would not have done so in the absence of a fraudulent,

---

[3] Subsection 115(4) identifies the following conduct as an unfair debt collection practice:

When the collection agency is a debt buyer or is acting on behalf of a debt buyer, bringing suit or initiating an arbitration proceeding against the debtor or otherwise attempting to collect on a debt when the collection agency knows, or reasonably should know, that such collection is barred by the applicable statute of limitations.

9

deceptive or misleading representation made by RJM. (Doc. 34.) This is a backdoor attempt, by Jenkins, to substantiate his factually inadequate accusations. Section 58-70-110 specifically lays out what would be considered fraudulent, deceptive and misleading representations, none of which can be applied to the actions undertaken by RJM.[4] RJM purchased the accounts which showed Jenkins as the account holder. RJM sent letters that offered settlements, but did not seek to have Jenkins acknowledge the debt in writing.[5] After a telephone conversation, RJM coded the accounts as "disputed" and no additional collection action was taken. Jenkins filed bankruptcy, which, in error, generated proofs of claims, and RJM withdrew those proofs of claims immediately. Given the aforementioned facts, RJM has done nothing deceptive or fraudulent, as defined by § 58-70-110(1-8), to Jenkins or regarding the accounts in dispute. Ultimately, Jenkins' fourth cause of action is not supported by the record; therefore, RJM's motion for summary judgment is granted and Jenkins' motion is denied.

        4. Sixth Cause of Action

Jenkins' sixth cause of action is an attempt to receive double the damages for the same alleged violation. In essence, Jenkins' is using the inverse of his fifth cause of action and using a limited set of facts to make circular arguments regarding RJM's liability. As discussed earlier, RJM has not violated the FDCPA. Therefore, the allegation that RJM's violation of the FDCPA also violates N.C. Gen Stat. § 58-70-115 must fail. For this reason, with respect to the sixth cause of action, Jenkins' motion for summary judgment is denied and RJM's motion is granted.

---

    [4] *See* N.C. GEN. STAT. § 58-70-110 (1 – 8).

    [5] The new sections of N.C. GEN. STAT. § 58-70-115 are specifically not retroactive. Jenkins' Complaint makes clear that the collection activity in this matter was in or about March of 2009. Although the current law would have barred RJM's collection letter, the amended statute was not in place at the time of the collection efforts alleged and are therefore not applicable to this situation.

## IV.

For the aforementioned reasons, there is no genuine dispute as to any material fact with respect to Jenkins' causes of action. RJM is entitled to judgment as a matter of law on all claims. Accordingly, Plaintiff's Amended Complaint will be dismissed in its entirety.

**IT IS THEREFORE ORDERED**, that Jenkins' Motion for Summary Judgment (Doc. 33) is **DENIED** and RJM's Motion for Summary Judgment (Doc. 42) is **GRANTED**.

Signed: February 14, 2013

Richard L. Voorhees
United States District Judge